UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LIONEL THOMPSON,                    )
                                    )
            Petitioner,             )
                                    )
      v.                            )      Case No. 4:21-CV-01476-SNLJ
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

## MEMORANDUM AND ORDER

On December 16, 2021, Petitioner Lionel Thompson ("Thompson") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Thompson's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Thompson's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

## I.    PROCEDURAL HISTORY

On October 2018, a federal grand jury returned a five-count Indictment charging Thompson with possession with the intent to distribute methamphetamine (Count One) in violation of Title 21, United States Code, Section 841(b)(1)(C); possession with the intent to distribute marijuana (Count Two) in violation of Title 21, United States Code, Section 841(b)(1)(D); being a felon in possession of a firearm (Count Three) in violation of Title 18, United States Code, Section 922(g)(l); possession with the intent to distribute marijuana, hydrocodone, morphine, cocaine base, fentanyl, and methamphetamine

1

(Count Four) in violation of Title 21, United States Code, Section 841(b)(l)(C); and possession of a firearm in furtherance of a drug trafficking crime (Count Five) in violation of 18 U.S.C. Section 922(c)(1).  4:18-cr-00821-SNLJ, Doc. 1[1].

### Guilty Plea Agreement

On February 26, 2020, Thompson entered into a Guilty Plea Agreement pursuant to Rule 11(c)(1)(A).  Doc. 36.  The Guilty Plea Agreement stated:

> Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Counts One and Four of the Indictment, the United States agrees to dismiss Counts Two, Three and Five at the time of sentencing. The United States further agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

Doc. 36 at 1.  The Guilty Plea Agreement also provided that: (1) Defendant "fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than $1,000,000.00, or both such imprisonment and fine," *Id*. at 5; (2) the parties "waive[d] all rights to appeal all non-jurisdictional, non-sentencing issues" and "all rights to appeal all sentencing issues other than Criminal History," *Id*. at 7-8; (3) Defendant "waive[d] all rights to contest the conviction or sentence in any post-conviction proceeding . . . except for claims of prosecutorial misconduct or ineffective assistance of counsel," *Id*. at 8; (4) Defendant "acknowledge[d] that this guilty plea [was] made of [his] own free will and that [he was], in fact, guilty," *Id*. at 11; and (5) Defendant understood "that there will be no right to withdraw the plea entered under this agreement,

---

[1] All remaining citations refer to the criminal case, 4:18-cr-00821-SNLJ, unless otherwise indicated.

except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring," *Id*. at 11-12.

Thompson appeared before this Court on February 26, 2020, for his change of plea hearing. Doc. 81, 82 (Plea Tr.). Thompson was placed under oath, and the Court reviewed the plea agreement and specifically addressed the waiver clause with him. Doc. 81 at 3, 8-9. The Court explained that the waiver covered everything that had happened in the case through the guilty plea, including the rulings on any pre-trial motions. *Id*. at 8. The Court also explained that if the Court sentenced within or below the guidelines range, Thompson would give up his right to appeal the sentence. *Id*. The Court also explained that Thompson reserved the right to appeal any issues related to the calculation of the Criminal History category. *Id*.

At the change of plea hearing, the Court also addressed Thompson's right to counsel and asked if he was satisfied with the representation he had received from his attorney. *Id*. at 4-5. Thompson testified that he was satisfied with the way his lawyer had handled his case, that she investigated the case to his satisfaction, that she had done everything he asked her to do, and that he had no gripes or complaints whatsoever regarding his representation. *Id*. The Court confirmed that Thompson had read the plea agreement, discussed it with his lawyer, and that he understood it. *Id.* at 7-8. The Court also reviewed the possibility that Thompson may be determined to be a career offender under the sentencing guidelines and that such a determination would not be made until a presentence investigation was done. *Id*. at 10. The Court advised Thompson that if that were the case, he would "fall into the criminal history category of category six," and that

his "total offense level [would] be higher as well at a level 29." *Id*. at 10. Based on Thompson's sworn testimony, the Court found Thompson was competent to enter the guilty plea and that he did so freely, knowingly, and voluntarily. *Id*. at 15. The Court accepted the plea agreement and found Thompson guilty as charged under Counts One and Four of the Indictment. *Id*.

**Request for New Counsel**

On December 9, 2020, the Court held a hearing concerning Thompson's request for new counsel. Doc. 56. The Court allowed Thompson to explain why he wanted a new attorney outside the presence of the prosecuting attorney. Doc. 83 (Hrg. Tr.). Thompson explained that he had asked his attorney to do a number of things, and that she did not do them. *Id*. at 5. The Court asked Thompson to provide specific details as to what problems he was having with counsel. *Id*. at 6. Thompson explained that he wanted counsel to object to "the criminal report" and to look at some cases. *Id*. at 8. Thompson did not believe counsel had looked at the cases. *Id*. In the same hearing, Thompson told the Court that he did not want new counsel. *Id*. at 6. The Court then declined to appoint new counsel as Defendant did not specify what problems he was having and because his attorney indicated that she would do what Thompson had asked. *Id*. at 6-8.

**Presentence Investigation Report**

On April 28, 2020, the Presentence Investigation Report was disclosed to the parties. Doc. 45. Neither party filed objections to the PSR, and a final Presentence Investigation Report was filed with the Court on April 29, 2021. Doc. 61. The Probation

Office calculated the advisory sentencing guidelines and Thompson's criminal history. The advisory guidelines concluded a base offense level of 16, an additional two levels were added as Thompson possessed a dangerous weapon, and the offense level was adjusted by 14 levels as Thompson was found to be a Career Offender, pursuant to Section 4B1.1(a) of the U.S. Sentencing Guidelines.  Doc. 61 at 6-16.

The Probation Office calculated Thompson's criminal history and because he was found to be a Career Offender, his criminal history category was VI.  Doc. 61 at 15-16. With a total offense level of 29 and a criminal history category of VI, Thompson's advisory sentencing range was 151 months to 188 months.  *Id*. at 21.  Thompson's Career Offender Status was based upon the following facts found by the Probation Office and unchallenged by Thompson: (1) he was at least 18 years old at the time of the instant offense; (2) the instant offense was a felony that was either a crime of violence or a controlled substance offense; and (3) Thompson had at least two prior felony convictions of either a crime of violence or a controlled substance offense (Voluntary Manslaughter under Docket Number 22951-02879-01, and Distribution of a Controlled Substance and Resisting Arrest Docket Number 1222-CR06805-01.  *Id*. at 9.

## **Sentencing Hearing**

Thompson appeared with his attorney for sentencing on May 6, 2020.  Doc. 84 (Sent. Tr.).  Because neither party filed objections to the PSR, the Court found and accepted the PSR's conclusion that the total adjusted offense level was 29 with a criminal history category of VI.  *Id.* at 3.  The Court then turned to the Government's motion to dismiss Count IV of the indictment.  *Id*.  The Government explained that it had recently

learned that the arresting officer relative to Count IV was included in the St. Louis Circuit Attorney's exclusionary list, and accordingly, the Government moved to dismiss Count IV to avoid any appearance of impropriety and requested to move forward with sentencing on Count I. *Id*. The dismissal of Count IV had no impact on the sentencing guidelines calculation, and Thompson's attorney agreed. *Id*. The Court indicated that it would not consider the circumstances relative to Count IV in imposing sentence and asked if Thompson agreed to the dismissal and to proceed with sentencing, to which he said, "yes." *Id*. at 5. The Court acknowledged that it had reviewed Thompson's sentencing memorandum and request for a variance. *Id*. at 6.

At the sentencing hearing, Thompson was given the opportunity to make a statement and said:

> The only statement I want to make is, first of all, I humbly regret making this – I don't want to even call it a mistake because it wasn't a mistake. You know, I did what I did, and I apologize, because I apologize to my family, my children, and everybody else involved, because it hurts everybody involved --me putting myself in this situation. You know, I know that. Like since being incarcerated I know that stress just made everything worse as far as with my health. You know, I got high cholesterol, high blood pressure. My nerves is bad. I been seeing a therapist. I've been depressed, because I'm -- you know, at the same time I'm scared. I don't want to die in prison. I want to do everything it takes to make sure that I go out of here and be productive, have my mind right, continue my mental health irregardless of where I go and just change my thinking and just try to be a better father to my children and everything and be productive. And I know that I have the mental capacity to do something about that. And other than that –

*Id*. at 11.

The Court acknowledged the severity of Defendant's criminal record as well as the fact that the circumstances of the offense were not "too aggravating." *Id*. at 12. In addition, the Court noted that Defendant would be turning 47 years old soon and

indicated that he would take that into account in providing some relief from the sentencing guidelines.  *Id*. at 12.  The Court acknowledged that the low end of the guideline range was 151 months and decided to impose a sentence of 120 months by way of a downward variance from the guidelines.  *Id*. at 13.  The prosecution then moved to dismiss Counts II, III, IV, and V of the indictment.  *Id*. at 15.  The Court granted that motion. *Id*. at 15; Doc. 65 ("Judgment").

**Appeal**

Although Defendant was sentenced on Count I only and his sentence was 31 months below the advisory sentencing guideline, on May 12, 2021, Defendant's trial counsel filed a notice of appeal challenging the application of the sentencing guidelines. Doc. 72.  Defendant filed a pro se motion for new counsel.  Doc. 76.  On May 24, 2021, the Eighth Circuit granted this motion and appointed substitute appellate counsel.  Doc. 77.  After reviewing the entire record and researching applicable law, appellate counsel questioned the district court's denial of a motion to appoint new counsel and the substantive reasonableness of the sentence and concluded there were no non-frivolous issues related to the plea and sought to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967).  Br. of Appellant, Lionel Thompson, No. 21-2065 (July 16, 2021).  On August 4, 2021, Defendant filed a pro se supplemental brief challenging the offense-level calculation and claimed ineffective assistance of counsel.  On November 4, 2021, the Eighth Circuit granted appellate counsel's motion to withdraw and dismissed the appeal, holding that "[t]he appeal waiver, which is enforceable, covers all but one of these issues. For that one, ineffective assistance of counsel, we decline to consider it now."  Doc. 87

7

and 88. The Court also "independently reviewed the record under *Penson v. Ohio*, 488 U.S. 75 (1988)" and agreed with appellate counsel that there were "no non-frivolous issues for appeal outside the scope of the appeal waiver." The Court dismissed the appeal, granted appellate counsel permission to withdraw, and denied the pending pro se motion as moot. *Id.*

On December 16, 2021, Defendant filed the instant motion for post-conviction relief. Doc. 90. The motion advances five claims of ineffective assistance on the part of trial counsel. *Id.* at 4–8.

## II.    GENERAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

A Section 2255 movant is entitled to relief when his sentence "was imposed in violation of the Constitution or laws of the United States." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011). The movant must show that the claimed error amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333 (1974). Importantly, the Eighth Circuit has recognized that "[a] defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

In the landmark case of *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test a defendant must satisfy in order to be entitled to relief. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the

8

"counsel" guaranteed by the Sixth Amendment. *Id*. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.*

Regarding the first prong of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance. As the Supreme Court explained, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Recognizing the complexity and variety of issues that defense counsel must confront and address in any given case, the Supreme Court refused to adopt a standard that would implement an exhaustive set of detailed guidelines to evaluate attorney performance. Instead, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. *Id.* The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second- guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id*. at 689 (citations and internal quotation marks omitted). The Supreme Court further instructed that a reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The second prong of the *Strickland* test requires a Movant to prove that he was prejudiced by counsel's deficient performance. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id*. at 691. The Supreme Court observed "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Thus, it is simply not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And where, as here, the defendant pleaded guilty, the defendant must establish that he would have insisted on going to trial. Indeed, it is well-settled that "[i]n order to satisfy the prejudice prong of the *Strickland* test in the guilty plea context, a defendant must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Moreover, where a movant has pled guilty, collateral review is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). To be valid, a guilty plea must be knowing, intelligent, and

voluntary.  *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  The plea must also be made with "sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748 (1970).  The voluntariness of a plea can only be determined by "considering all of the relevant circumstances surrounding it."  *Id*. at 749.  When a movant claims his guilty plea was not knowing and voluntary due to ineffective assistance, he "must overcome strong presumptions of counsel's competence and of the voluntariness of the guilty plea based on his representations at the plea hearing."  *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993).

Ultimately, when evaluating an ineffectiveness claim, a reviewing court is not required to address both prongs of the *Strickland* test if the defendant makes an insufficient showing on one.  As the Supreme Court instructed, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed."  *Id*. at 697.  Accordingly, if a reviewing court determines the alleged errors would have had no impact on the result of the proceeding, the claim of ineffectiveness must fail.

**Need for Evidentiary Hearing and Burden of Proof**

A motion filed under 28 U.S.C. § 2255 should be denied without an evidentiary hearing when the court records conclusively show that the movant is not entitled to relief.  The statute provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the

prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

*Id*. Additionally, Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *United States v. Oldham,* 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, would entitle the movant to relief. *Payne v. United States,* 78 F.3d 343, 347 (8th Cir. 1996). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.* at 225-26; *see also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995);

*Engehlen v. United States*, <u>68 F.3d 238, 240</u> (8th Cir. 1995).

## III.   <u>ANALYSIS</u>

In his motion to vacate, Thompson raises five ineffective assistance claims in seeking post-conviction relief.  Specifically, Defendant argues that trial counsel provided constitutionally deficient representation by: (1) failing to seek a continuance of the sentencing hearing and moving for a withdrawal of the guilty plea; (2) failing to file a motion to dismiss the indictment on an alleged "IAD" violation; (3) failure to investigate prosecutorial misconduct; (4) providing inadequate consultation and inadequate advice; and (5) that his counsel provided ineffective assistance by failing to file a motion to suppress evidence. As each of these claims fails on the merits, the Court will dismiss Thompson's motion without a hearing.

### A. Ground One: Trial counsel was not ineffective for failing to seek a continuance of the sentencing and to move for a withdrawal of the guilty plea.

In his first claim for post-conviction relief, Thompson alleges that he "had ineffective assistance of counsel by the court's constructive denial of counsel and counsel's refusal to seek a continuance of the sentencing and refusal to move for withdrawal of the guilty plea."  Civil Case, Doc. 1-1 ("Memo") at 1; *see also Id*. at 12-17; Mot. to Vacate at 4.  However, Thompson fails to demonstrate that trial counsel's decision not to move for withdrawal of the guilty plea or for continuance of sentencing constituted deficient performance or prejudice. Therefore, Thompson's ineffective assistance of counsel claim as to ground one fails.

Thompson's argument that counsel's decision not to file for a continuance of

sentencing or motion to withdraw constitutes ineffective assistance fails for four reasons. First, "a defendant has no absolute right to withdraw a guilty plea before sentencing, and the decision to allow or deny the motion remains within the sound discretion of the trial court." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997); *see also United States v. Boone*, 869 F.2d 1089, 1091 (8th Cir. 1988), cert. denied, 493 U.S. 822 (1989). Even if trial counsel had moved for a motion to withdraw his guilty plea, Thompson makes no argument to suggest that there was a "substantial probability" that the court would have granted a motion under Rule 11(d)(2)(B). *See Holtan v. Parratt*, 683 F.2d 1163, 1170-71 (8th Cir. 1982). In particular, Defendant fails to identify any grounds for withdrawal of the guilty plea that he did not know at the time of his plea hearing as to Count I. Even if the officer's inclusion on the St. Louis Circuit Attorney's exclusionary list as to Count IV was relevant as to that count, it would not have effected Count I, the only Count that he was sentenced under. *See United States v. Alvarado*, 615 F.3d 916, 920 (8th Cir.2010) ("When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." (quotation omitted)). As such, there was no prejudice to Thompson.

Second, Thompson had multiple opportunities to reject the guilty plea agreement on the basis of his belief that certain officers were on the St. Louis Circuit Attorney's exclusion list. Thompson's attorney acted reasonably by choosing not to pursue a continuance after the Government had moved to dismiss the Count related to the officer on the exclusion list. Thompson claims that he informed trial counsel at their first

meeting, in "June or July of 2019" that he believed that officers on the St. Louis Circuit Attorney's exclusion list were involved in his arrest, and that he would like her to check to see if that were true.  Memo at 7.  Trial counsel stated that between June 7, 2019, and December 23, 2019, she had an investigator assigned to the case to investigate Thompson's concerns about the police in this case, who was "unable to locate any evidence to challenge the police officers' credibility."  Affidavit at 1.  Thompson states that trial counsel informed him that no officers involved in his arrest were on the exclusion list, but at the plea hearing, Thompson stated that he was satisfied with the way trial counsel had handled the case; satisfied that trial counsel had investigated the case; and satisfied that trial counsel had done everything he had asked her to do.  Doc. 81 at 4. Furthermore, Thompson stated that he understood that upon accepting the agreement, he would not later be allowed to withdraw his plea of guilty.  *Id*. at 7.  A defendant's sworn statements when entering a guilty plea "are accorded a great measure of finality."  *Tran v. Lockhart*, 849 F.2d 1064, 1068. (8th Cir. 1988).  They constitute "a formidable barrier in any subsequent collateral proceedings."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) ("[D]efendant's statements made during plea hearing carry strong presumption of verity."); *Pennington v. Housewright*, 66 F.2d 329, 331 (8th Cir. 1981) ("Great weight is to be given to statements made in connection with a guilty plea[.]")

Third, where, as here, an allegation of deficient performance is based upon the failure to file a motion, the Court must consider whether the decision to forego such a motion constituted a "reasonable trial strategy."  *Johnson v. United States*, 604 F.3d

1016, 1019 (7th Cir. 2010). In

addition,

> Since "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, when a habeas corpus petitioner such as [Thompson] claims that his lawyer's failure to make a motion was ineffective, he must "prove the motion [would have been] meritorious.

*Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir. 2006). As discussed above, Thompson fails to make a showing that there is a substantial probability that a motion to withdraw his plea of guilty under Rule 11(d)(2)(B) would have been granted.  He fails to make any showing that trial counsel's decision to accept the Government's offer to drop Count IV in lieu of seeking a continuance was not a reasonable trial strategy. Finally, Thompson fails to present any evidence that suggests that trial counsel's decision to rely on the sentencing court to adopt a sentence below the guideline range was not a reasonable trial strategy.

Finally, Thompson "has not provided any evidence, aside from his own after-the-fact [allegation], that he actually instructed counsel to withdraw his guilty plea." *See Hill v. United States*, No. 2:13-CR-51-RWS-JCF-1, 2017 WL 3131976, at *7 (N.D. Ga. July 24, 2017).  Trial counsel's affidavit contradicts his allegation that he did in fact desire a motion to withdraw his guilty plea.  In her affidavit, attached as Government Exhibit 1 and hereafter referred to as "Affidavit," trial counsel states "I… expressed the pros and cons of his options.  He chose to proceed with the sentencing and have the counts dismissed."  Affidavit at 3.  This Court can "mak[e] a factual determination based on the relative credibility of [former defense counsel and the petitioner] without the benefit of

an evidentiary hearing" only if it finds that Defendant's claims are "facially incredible" or the competing allegations regarding the appeal request do not "contain similar specificity." *See Witthar v. United States*, 793 F.3d 920, 923 (8th Cir. 2015) (quotation omitted).

Thompson's position is based upon a fundamental misreading of his legal position at the time of his sentencing.  To show that there was prejudice, Thompson must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.  Thompson fails to show that there is a reasonable probability that a Rule 11(d)(2)(B) motion would have been granted, or that a continuance, even if it had been granted, would have changed the outcome of his sentencing.  Accordingly, Thompson's arguments in Ground One fall short of establishing deficient performance or prejudice.

### B. Ground Two: Trial counsel was not ineffective for failing to file a motion to dismiss indictment on an Interstate Agreement on Detainers Act violation.

Thompson's second claim against trial counsel again alleges that trial counsel was ineffective for failing to withdraw the guilty plea and file a motion to dismiss the indictment on an alleged "IAD" [sic] violation, which the Court will construe as an alleged Interstate Agreement on Detainers Act violation ("IADA").  Memo at 1; *see also id*. at 17–19; Mot. to Vacate at 5.  Even assuming that Thompson's argument with respect to the IADA was not waived by virtue of his guilty plea, his claim fails on the merits.

Under his Guilty Plea Agreement, Thompson faces additional procedural difficulties stemming from his plea of guilty. "IADA violations are non-jurisdictional

17

defects waived by a valid plea." *Baxter v. United States*, 966 F.2d 387, 289 (8th Cir. 1992); *Camp v. United States*, 587 F.2d 397, 399-400 (8th Cir. 1978).   But even assuming that Thompson's IADA claim was somehow not waived by virtue of his guilty plea, "the mere failure to comply with the IADA, without more, does not justify relief under section 2255.  To prevail on his claim, [the petitioner] must prove that the statutory violation prejudiced him in some aspect of his state imprisonment or in defending against a federal charge." *Shigemura v. United States*, 726 F.2d 380, 381 (8th Cir. 1984). Thompson fails to demonstrate that he was prejudiced by the failure to pursue a dismissal of the indictment.  To show prejudice, Thompson must show that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035.  Here, Thompson wholly fails to demonstrate that a motion to dismiss pursuant to the IADA would have been meritorious if filed.  Thompson has offered no evidence tending to establish that such a motion would have been granted.  "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice…that course should be followed." *Strickland*, 466 U.S. at 697.  Since Thompson is unable to show that he was prejudiced, he is not entitled to relief.

### C. Ground Three: Trial counsel was not ineffective for failing to investigate prosecutorial misconduct.

Thompson's third claim against trial counsel alleges that she failed to "investigate prosecutorial misconduct of St. Louis City prosecutor and federal prosecutor and filing for dismissal."  Memo at 2; *see also id*. at 19-21; Mot. to Vacate at 6.  Thompson's claim

that counsel failed to adequately investigate the possibility that prosecutorial misconduct occurred is reviewed under the two-part *Strickland* test.  To prevail, Thompson must show that counsel's performance was unreasonable under prevailing professional standards and that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.  *Stewart v. Kelley*, 890 F.3d 1124, 1128 (8th Cir. 2018).  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694).  Thompson fails to make such a showing, or even to allege in a non-conclusory manner that prosecutorial misconduct occurred.

Thompson seems to contend that trial counsel did not investigate prosecutorial misconduct related to whether the officers involved with his arrests were on the St. Louis Circuit Attorney's exclusionary list, even when he requested that she do so.  Mot. to Vacate at 7.  Thompson states that he believes that the Government was aware of the placement of one of the arresting officers on the St. Louis Circuit Attorney's exclusion list and that they withheld this information from the defense, a series of events that, if true, would in Thompson's mind give rise to a claim of prosecutorial misconduct.  Mot. to Vacate at 7-9.  Thompson presents a list of conclusory statements in support of his claim that there was prosecutorial misconduct, such as, "[b]ecause of political infighting, petitioner was a victim of the assistant prosecutor's vindictiveness."  *Id*. at 20.  But Thompson's claim lacks "sufficient specificity under even the most liberal pleading requirements" because he fails to explain how trial counsel was deficient or what evidence would have been uncovered beyond the finding that there was evidence to

challenge any of the arresting officers' credibility. *See Hayes v. United States*, No. 4:10CV1422 CDP, 2011 WL 4635621, at *4 (E.D. Mo. Oct. 5, 2011) (quoting *Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001)).  Thompson makes an unfounded claim that the police were aware of the placement of one of their own on the exclusion list before his sentencing took place and claims that federal and city prosecutors failed to uncover this evidence and produce it to the defense.  *Id.* at 21.  However, there was no prejudice to Thompson in that the alleged misconduct would only affect Thompson's arrest on July 31, 2018, all of the counts arising out of that arrest were dismissed. Further, this ignores the fact that the Government moved to dismiss Count IV at the Sentencing hearing within a week of learning that one of the arresting officers had been placed on the exclusion list.  "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).  Here, trial counsel's decision to have an investigator assigned to Thompson's case easily clears the minimum bar for reasonable competence required of defense counsel under Strickland.

It is true that defense counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Kemp v. Kelley*, 924 F.3d at 500.  That includes a duty to investigate important defenses and to adequately "explore all avenues leading to facts relevant to guilt and degree of guilt or penalty." *Eldridge v. Atkins*, 665 F.2d 228, 232 (8th Cir. 1981).  However, deference to counsel's decisions means the court reviews

"not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987).  So long as counsel's investigation decisions were reasonable under the circumstances, failure to discover additional facts is not sufficient to show unreasonable performance.  *Kemp*, 924 F.3d at 500.  Furthermore, "as a general rule, [p]rosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process." *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir.1998), *cert. denied*, 525 U.S. 1073 (1999).  There is no non-frivolous allegation in Thompson's motion that the federal prosecutors acted in such a way as to deny Thompson due process.

At the sentencing hearing, almost 18 months after trial counsel's investigation, the Government produced evidence stating that they had been told less than a week before that an officer had been placed on the exclusion list.  Doc. 84 at 3-4.  Upon furnishing this information, the Government voluntarily dismissed the count (Count IV) in the indictment relating to the excluded officer. *Id*. at 4.  By working with the Government to secure their commitment to drop Count IV on the day of sentencing, trial counsel certainly did not perform deficiently, and Thompson cannot show prejudice because an investigation that uncovered the officers' placement on the exclusion list could at best only have resulted in Count IV's dismissal, exactly what occurred during sentencing.  Thus, Ground Three fails.

### D. Ground Four: Trial counsel was not ineffective in providing consultation and advice.

Thompson's fourth claim against trial counsel alleges that she provided "inadequate consultation and inadequate advice about charges that would not be in his history, but they were." Memo at 2; *see also id.* at 21-25; Mot. to Vacate at 8. Thompson alleges that trial counsel was totally "absent during a critical stage of [his] criminal proceeding[,]" specifically, the sentencing hearing. He bases this claim on his contention that she did not seek to have a private meeting with him, which in Thompson's view resulted in a constructive denial of counsel. Mot. to Vacate at 22-23. However, Thompson has failed to show constructive denial of counsel, and Ground Four fails as a matter of law.

The Supreme Court has stated that "the actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692. However, the choice of trial counsel to discuss the pros and cons of the defendant's case within the courtroom rather than in a private room during a sentencing hearing is not the kind of structural error in representation that results in a finding of constructive denial of counsel. *See Tucker v. Day*, 969 F.2d 155, 159 (5th Cir.1992) (counsel remained silent through resentencing hearing); *United States v. Mateo*, 950 F.2d 44, 48–50 (1st Cir. 1991) (same throughout trial despite absence of waiver); *Harding v. Davis*, 878 F.2d 1341, 1345 (11th Cir. 1989) (failure to object to directed verdict by trial court); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984) (attorney slept through substantial portion of trial); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (counsel failed to

provide evidence of petitioner's horrific history of abuse to sentencing jury at a death penalty proceeding); *Williams v. Taylor*, 529 U.S. 362, 369 (2010) (defense counsel's closing argument at sentencing hearing emphasized the difficulties in finding reasons why the jury should spare petitioner's life). In contrast to this list of serious abuses of the attorney-client relationship, the external setting in which a defense attorney chooses to fulfill their duty to counsel and zealously advocate for their client has never been held to constitute constructive denial of counsel, and Thompson does not point to a single precedent to support his contention that it does.

Thompson further seems to suggest that his counsel was ineffective because she led him to believe that his criminal history would not be incorporated into the sentencing determination. Memo at 2; see also id. at 21-25; Mot. to Vacate at 8. This argument is directly contradicted by the terms of his plea agreement, which states that "[d]epending on the underlying offense and defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant to be a Career Offender, the advisory Total Offense level, with a 3-level reduction of responsibility taken into account, will be a Level 29 with a Criminal History Category score of VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not a Career Offender." Doc. 36 at 6-7. At Thompson's plea hearing, the Court went to substantial lengths to ensure that Thompson understood that the determination of his status as a Career Offender was not resolved by the plea agreement but was instead up to the discretion of the Court and Probation Office. The Court stated:

23

> So you'll understand, after your plea I will get with the probation office. And we will calculate the sentencing guidelines by using two factors. The first is your criminal history, your criminal record in other words; and the second is what we call the total offense level for these offenses… I see that the lawyers agree a total offense level for Counts 1 and 4 is 15. And it may well be 15… unless it's determined that you fall under this category of being a career offender. And we are not going to know that until we do a presentence investigation but if you fall under that category of being a career offender… your total offense level will be higher as well at a level 29… Do you understand all of that?... [The Defendant: Yes.] … Do you have any questions?... [The Defendant: No.].

Doc. 81 at 9-10.

Thompson also contends that the inclusion of the dismissed charges in the PSR rendered him ineligible for early release upon completion of the Residential Drag Abuse Program ("RDAP") while in the Bureau of Prisons.  This is presumably a reference to the two-level increase under USSG 2D1.1(b)(1) for possessing a dangerous weapon (a firearm) in connection with his drug-distribution activities.  Doc. 61 ¶ 25.  This argument is directly contradicted by the terms of his plea agreement, which state, "The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3" after which the recitation of facts included in part:

> On July 31, 2018, officers received an alert that a 2004 Pontiac Grand AM was wanted for UUW-Exhibiting. A wanted subject, Lionel Thompson, was attached to the vehicle. The Grand AM was observed traveling south on S. Grand. Officers attempted to conduct a traffic stop and the vehicle eventually stopped in the 3600 block of S. Grand located in the City of St. Louis within the Eastern District of Missouri. The officer approached the passenger side to speak with the occupant who identified himself as Defendant Lionel Thompson. While speaking with Defendant, officers smelled a strong odor of marijuana and Defendant was ordered 25 multiple blue and round pills resting on the floorboard next to an open black satchel. The satchel contained a handgun magazine. A search of the vehicle

revealed a .40 caliber handgun on top of a clear plastic bag containing several types of suspected narcotics inside the center console. It was determined that Defendant possessed 11.77 grams of marijuana; 6 pills of hydrocodone weighing .030 grams; 3 pills of morphine weighing .180 grams; 13 knotted plastic bags containing 5.87 grams of cocaine base; 3 knotted plastic bags containing .73 grams fentanyl; 3 knotted plastic bags containing 30 tablets weighing 5.93 grams of methamphetamine. Expert testimony, in the event of trial, would also establish that the amount of the controlled substances possessed by the Defendant and themanner of packaging in the instant case is consistent with the intent to distribute. In a post-Miranda interview, Defendant responded to officers' questions regarding the owner of the firearm and narcotics, "Shit it's my car officer. My stuff then."

Doc. 36 at 3-4.

While the inclusion of the fact that Thompson possessed a firearm when arrested on July 31, 2018, (Count IV) is one factor that could make him ineligible for early release under RDAP, that fact was included as relevant conduct in the plea agreement signed by Thompson and tendered to the Court.  Likewise, that fact was included in the recitation of the facts at the time of the change of plea hearing to which Thompson admitted while under oath.  Doc. 81 at 11-14.  The dismissal of Count IV had no effect on Thompson's relevant conduct and the fact that Thompson possessed a firearm was readily provable as relevant conduct at sentencing.

Thompson's contention that trial counsel led him to believe his criminal history would not be considered or incorporated by the sentencing court is utterly contradicted by the evidence and thus cannot support a claim for ineffective assistance of counsel. A defendant's sworn statements when entering a guilty plea "are accorded a great measure of finality." *Tran v. Lockhart*, 849 F.2d 1064, 1068. (8th Cir. 1988).  They constitute "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431

U.S. 63, 74 (1977).  It is undisputed that Thompson was informed by counsel that his criminal history would be considered and that he may be deemed a Career Offender.  It is further undisputed that Thompson admitted to possession of a firearm and agreed to that fact as relevant conduct in the case.  Accordingly, Ground Four fails on this basis.

### E. Ground Five: Trial counsel was not ineffective for failing to file a motion to suppress.

Thompson's fifth and final claim against trial counsel alleges that trial counsel failed to file a motion to suppress.  Specifically, Thompson contends that he "explained to counsel that the officer lied in his report about his reasons for searching vehicle and the dash cam videos would have proved that the officers lied but counsel failed to file a motion to suppress based on a 4th Amendment violation."  Memo at 2; *see also id*. at 25-26; Mot. to Vacate at 9.  However, Thompson fails to indicate whether his claims regard the search of his vehicle on May 13, 2018, as charged in Count One, or the search of the vehicle in which he was a passenger on July 31, 2018, as charged in Count Four.  Either way, this argument overlooks at least two exceptions to the Fourth Amendment's general warrant requirement that justified a search of the vehicles. Accordingly, Thompson's fifth claim fails, as the failure to raise a meritless argument cannot constitute ineffective assistance of counsel.

"When a defendant claims that counsel was ineffective by failing to litigate a Fourth Amendment challenge to a search and seizure, the defendant must prove that the claim is meritorious."  *United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012) (citation omitted).  This requirement stems from both prongs of the *Strickland* test.  *United States*

*v. Johnson*, 707 F.2d 317, 323 (8th Cir. 1983). Regarding performance, "[c]ounsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile." *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014) (collecting cases). A petitioner cannot show prejudice by raising a non-meritorious claim. *See McCloud v. United States*, No. 4:11-CV-1721 CAS, 2015 WL 224990, *19–20 (E.D. Mo. Jan. 15, 2015) (citing *DeRoo*, 223 F.3d 925).

Based on uncontroverted facts from both the Plea Agreement and the PSR, St. Louis Metropolitan Police Department officers had ample justification to conduct a warrantless search of the vehicles on both May 13, 2018, and July 31, 2018. On both occasions, the officers conducted a valid stop the vehicle Thompson was observed occupying. In the May 13, 2018, stop, the officers approached the vehicle and contacted Defendant. While officers were interviewing Thompson, a strong odor of marijuana was emanating from the vehicle. The officers requested Thompson to exit the vehicle, which he complied. The officers searched Thompson's vehicle and located a lunch box containing a white powdery substance, a large plastic bag containing two knotted bags of marijuana, along with several pills of various colors, and a digital scale. Doc. 36 at 3; Doc. 61 ¶ 12. In the July 31, 2018, stop, officers stopped a vehicle that was wanted for Unlawful Use of a Weapon-Exhibiting and a wanted for Thompson was also attached to the vehicle. The officers contacted Thompson who was the passenger of the vehicle. As officers were speaking with Thompson, they detected a strong odor of marijuana emanating from the vehicle. The officers requested that Thompson exit the vehicle. Upon exiting, officers observed a clear bag containing multiple blue and round pills

resting on the floorboard next to an open satchel.  The officers retrieved the bag containing the suspected controlled substances and a handgun magazine from the passenger's side of the vehicle.  A .40 caliber handgun loaded with one round and eleven rounds of ammunition in the magazine was located on top of a clear plastic bag containing several types of suspected narcotics inside the center console.  Thompson admitted that he was responsible for the firearm and controlled substances.  Doc. 36 at 4; Doc. 61 ¶ 14.  Thompson verified these facts as to both stops while under oath at the plea hearing.  Doc. 81 at 13-16.  Thus, the officers had more than sufficient probable cause to believe that the vehicles contained contraband or other evidence of a crime . . . namely the drugs on May 13, 2018, and the drugs and the firearm on July 31, 2018, which were not recovered on Thompson's person.  *See United States v. Winarske*, 715 F.3d 1063, 1068 (8th Cir. 2013).

Because the St. Louis Metropolitan Police Department officers had at least two lawful grounds for searching the vehicles, it would have been futile for defense counsel to move to suppress the drugs.  Trial counsel is not ineffective for failing to pursue a motion that she reasonably believes would be futile.  *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).  "There was neither prejudice to his defense, since a motion to suppress would not have succeeded, nor lack of due diligence on the part of his attorney, since an attorney will not be held negligent for failure to make a non- meritorious motion."  *Johnson*, 707 F.2d at 323.  Therefore, Thompson's fifth ineffective-assistance claim fails as a matter of law.

## IV.    <u>MOTION TO AMEND/SUPPLEMENT 28 U.S.C. § 2255 PETITION</u>

On May 12, 2023, Thompson filed a Motion to Amend/Supplement 28 U.S.C. § 2255 Petition.  Section §2255 (f) provides that:

"A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

The judgment of conviction became final on February 2, 2022, when Thompson's 90-day deadline for filing a petition for writ of certiorari expired.  Thompson filed the pending Motion to Amend/Supplement 28 U.S.C. §2255 Petition on May 12, 2023. Accordingly, his motion to vacate is not timely under the general one-year limitation period in section 2255(f)(1).  *See Mora-Higuera v. United States*, 914 F.3d 1152, 1154 (8th Cir. 2019) (per curiam) ("Motions under § 2255 are subject to a one-year limitations period.  In practice, this usually means that a prisoner must file a motion within one year of 'the date on which the judgment of conviction becomes final.'").  Therefore, the Court will deny Thompson's Motion to Amend/Supplement 28 U.S.C. §2255 Petition [Doc. 22].

29

V.    **<u>CONCLUSION</u>**

For the foregoing reasons, this Court will deny Thompson's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Thompson has not made a substantial showing of the denial of federal constitutional right.

**IT IS FURTHER ORDERED** Defendant's Motion to Amend/Supplement 28 U.S.C. §2255 Petition [Doc. 22] is denied.

**IT IS FURTHER ORDERED** Defendant's Motion to Expedite Ruling [Doc. 27] and Motion for Judgment on the Pleadings [Doc. 28] are denied as moot.

**SO ORDERED** this 3rd day of June, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE